IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-697-01 |
| MARK ALAN MENDELSON | : | |

**SURRICK, J.**                                                                  **MAY  10 , 2010**

## MEMORANDUM

Presently before the Court is the Motion of United States of America to Modify or Adjust Payment for Fine (Doc. No. 84). For the following reasons, the United States' Motion will be granted.

**I.    BACKGROUND**

On December 12, 2007, Respondent entered a plea of guilty to conspiring to make false statements to a bank in violation of 18 U.S.C. § 371 and bank bribery in violation of 18 U.S.C. § 215. (Doc. No. 14 at 1.) On March 25, 2008, Judge Giles sentenced Respondent to imprisonment for a period of 60 days and ordered him to pay a fine of $1 million. (Doc. No. 33 at 3.) The fine was due immediately and provided a payment schedule "of not less than $100,000.00 . . . per month while Defendant is incarcerated . . . . Any portion of the fine not paid in full at the time of Defendant's release from imprisonment shall become a condition of supervision and shall be paid at a rate of not less than $250,000 . . . per month." (*Id.*)

Following his sentencing, Respondent's health, which was already poor, worsened significantly. (Doc. No. 85 at 3.) Because of his health problems, the date on which Respondent was to surrender to the Bureau of Prisons has been extended multiple times. (*See* Doc. Nos. 54,

59, 61, 63, 64, 66, 67, 76, 87, and 90.) As of this date, Respondent has still not served his prison sentence. (Doc. No. 84 at 2.)

Respondent is currently the sole caretaker of several financially dependant individuals. (Doc. No. 91 at 17-19; *see also* Doc. No. 91 Ex. G-4.) Respondent cares for his five-year-old daughter and her 32-year-old mother, who has significant problems that have required institutionalization and ongoing treatment. (Doc. No. 91 at 17-18.) Respondent's 29-year-old son lives with him, is disabled as a result of an automobile accident, and is also financially dependant on Respondent. (*Id.* at 18.) Finally, Respondent's unemployed 26-year-old daughter and 22-year-old nephew live with Respondent. (Doc. No. 91 at 18-19; *see also* Doc. No. 91 Ex. G-4.)

Respondent has significant investments. (Doc. No. 91 Ex. G-4; *see also* Doc. No. 91 at 22.) Prior to his sentencing, Respondent submitted a net worth statement indicating that he was worth over $20 million. (Doc. No. 91 at 20.) Much of Respondent's wealth is in the form of real estate investments. (*Id.* at 22.) Since his initial net worth statement was submitted, the value of Respondent's real estate holdings has significantly decreased. (*Id.*; *see also* Doc. No. 91 Ex. G-4.) In addition to the decrease in real estate values, Respondent lost two properties to bankruptcy and tax sales. (Doc. No. 91 at 22.) Nevertheless, Respondent does have an interest in a valuable property on Columbus Avenue in Philadelphia that he is currently attempting to sell. He estimates his interest in that property to be approximately $6 million. Respondent is also a co-trustee of the Mendelson Family Trust. The trust assets have a value in excess of $800,000. Respondent presently uses the trust to pay his household expenses. (*Id.* at 23-26.) Respondent asserts that his gross monthly income is $14,200 and his total monthly expenses are $27,785.

2

(Doc. No. 91 Ex. G-4.)

On September 4, 2009, Respondent sold his home for $3.9 million. (*Id.* Ex. G-3.) This prompted the Government to file the instant motion to adjust payment of Respondent's fine. Based on the HUD Settlement Statement, after the payment of settlement expenses, Respondent received $1,256,486.92 from the sale. (*Id.* Ex. G-1; *see also* Doc. No. 84 Ex. A.) On September 14, 2009, Counsel for the Government contacted Respondent and requested payment of the fine. (Doc. No. 84 at 3.) On September 15, 2009, after discussion between counsel, Respondent paid $200,000 towards the fine. (*Id.*; *see also* Doc. No. 85 at 4.) In addition, $156,763.68 was paid towards the fine on December 10, 2009, when the Government received funds that were being held by the title clerk after the sale of Respondent's residence.[1] As a result of those payments, and an initial "good faith" payment of $5,000 on July 8, 2009 (*see* Doc. No. 91 Ex. D-3), Respondent has paid a total of $361,763.68 toward the $1 million fine imposed on March 25, 2008. Respondent has also paid $200 in special assessments.

## II.     DISCUSSION

In its Motion to Modify or Adjust Payment Schedule for Fine, the Government asks the Court to adjust the payment schedule of Respondent's fine or to make the balance of the fine payable immediately pursuant to 18 U.S.C. § 3572(d)(3).[2] (Doc. No. 84 at 3, 6.) The

---

[1] Letter from Joseph F. Minni, Assistant United States Attorney, to the Court dated December 10, 2009.

[2] 18 U.S.C. § 3572(d)(3) provides that:

A judgment for a fine which permits payments in installments shall include a requirement that the defendant will notify the court of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine. Upon receipt of such notice the court may, on its own motion or the motion

Government argues that Respondent's recent sale of his home was a material change in economic circumstances that affected Respondent's ability to pay the fine. (*Id.* at 4.) Respondent replies that the Government's motion is actually asking for both an adjustment of the fine under § 3572(d)(3) and a modification of the fine under § 3573. (Doc. No. 85 at 2.) Respondent argues that the fine should be remitted because the fine does not reflect Judge Giles's intent in imposing the fine. (Doc. No. 85 at 7.) With regard to an adjustment under § 3572(d)(3), Respondent argues that the fine was due immediately and therefore § 3572(d)(3) does not apply. (Doc. No. 85 at 6.) In addition, Respondent argues that the Government did not properly assert its claim at the closing for the sale of Respondent's home. (*See* Doc. No. 85 at 4.)

### A. Government's Request to Modify or Adjust Respondent's Payment Schedule

The Government requests an adjustment of the payment schedule for Respondent's fine pursuant to § 3572(d)(3). (Doc. No. 84 at 6.) Respondent replies by interpreting the Government's motion as a motion to modify the fine under § 3573, stating that "the government has expressly moved in the alternative for 'modification' of the fine [under 18 U.S.C. § 3573], a petition which only the government has the authority to file." (Doc. No. 85 at 7-8.) Respondent contends that if the motion is interpreted as a § 3573 motion to modify, then this permits Respondent to seek a remission of the fine. (*Id.* at 2.) Respondent argues that we "should grant the government's alternative motion to 'modify' the fine but not in the manner proposed by the government." (*Id.* at 5.) Rather, we should use the Government's request to modify

---

of any party, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

4

Respondent's fine as an opportunity to remit a significant portion of the fine.[3]

Respondent's argument is without merit. The Government's motion does not request a modification of Respondent's fine under § 3573. The only mention of § 3573 in the Government's motion is a footnote, which correctly states that "only the government may petition for remission of a fine, and only upon the basis of administrative efficacy." (Doc. No. 84 at 4 n.2 (citing 18 U.S.C. § 3573; *United States v. Seale*, 20 F.3d 1279, 1286 n.8 (3d Cir. 1994)).) The Government advises that it never intended that the motion be treated as a motion to modify under § 3573. We are satisfied that the only fair reading of the Government's motion is that it requests only an adjustment of the payment schedule under § 3572(d)(3). We decline Respondent's invitation to interpret the Government's motion as a motion to modify the Respondent's fine under § 3573.

B.      **Government's Request for Immediate Payment**

The Government's motion seeks immediate payment of the remaining portion of Respondent's fine. (Doc. No. 84 at 3.) Under § 3572, a "court may . . . adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C.

---

[3] To remit a fine under § 3573, the Government must show "that reasonable efforts to collect a fine or assessment are not likely to be effective." 18 U.S.C. § 3573. Respondent argues that the Government's failure to file a lien on Respondent's home demonstrates that reasonable efforts to collect the fine are not likely to be effective. (Doc. No. 85 at 8.) However, under 18 U.S.C. § 3613(c), a government fine automatically becomes a lien on Respondent's property. *See* 18 U.S.C. § 3613(c) ("A fine imposed pursuant to the provisions of [§ 3572] . . . is a lien in favor of the United States on all property and rights to property of the person fined . . . ."); *see also United States v. Nunez*, No. 07-709, 2008 WL 3862094, at * 1 (D.N.J. Aug. 18, 2008) (stating that based on a § 3613(c) lien, "if the bank account in question contains Defendant's funds, the Government has a lien on those funds, and may garnish them using appropriate process"). In any event, as we decline to interpret the Government's motion as a motion to modify Respondent's fine under § 3573, the issue is moot.

§ 3572(d)(3). If "the judgment permits payments in installments, the statute authorizes a district court to reschedule a fine payment due to a change in economic circumstances." *United States v. Wynn*, 328 F. App'x 826, 828 (3d Cir. 2009) (non-precedential) (citing *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003)). However, this power "does not apply where the fine is due immediately and in a lump sum." *Id*.

Respondent cites *Wynn* and argues that "the fine was explicitly made payable in full, immediately," and therefore the Government's motion must be denied. (*See* Doc. No. 85 at 6 (citing *Wynn*, 328 F. App'x at 828).) Respondent contends that the payment is required to be made in full, and not based on a schedule, because Judge Giles stated that "[t]he Defendant has the wherewithal . . . to pay the full fines immediately." (Doc. No. 50 at 45; *see also* Doc. No. 85 at 6.) We note that Judge Giles went on to state that "if [the fines] are not paid immediately, they shall be paid at a rate on [sic] less than . . . $100,000 a month while incarcerated and at a rate of not less than $250,000 per month during the period of supervised release, starting 60 days after release from confinement." (Doc. No. 50 at 45.) Clearly, payment was to begin immediately, and any unpaid portion the fine, after Respondent's immediate commencement of payment, would be paid in installments as required by the Court. A fine that is ordered due immediately is typically "'interpreted to require not immediate payment in full but payment to the extent that the defendant can make it in good faith, beginning immediately.'" *United States v. Jackson-El*, 179 F. App'x 147, 149 (3d Cir. 2006) (non-precedential) (quoting *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1998)). Judge Giles did not order Respondent to pay the full amount immediately. Respondent's argument is without merit.

6

C.  **Judge Giles's Fine**

Respondent states that his fine was intended to "recoup [Respondent's] gain on the transaction, and . . . to punish him in an amount commensurate with the seriousness of the offense, viewed in the context of his net worth . . . ." (Doc. No. 85 at 5.) Respondent contends that the fine should be decreased because it was Judge Giles's intent to fine Respondent 5 percent of his net worth and that Judge Giles did not intend "to leave [Respondent] destitute or homeless . . . ." (Doc. No. 85 at 7.) Respondent's characterization of Judge Giles's intent is inaccurate. Judge Giles does not mention Respondent's net worth in relation to setting Respondent's fine. (*See* Doc. No. 50 at 39-40 (discussing the justification of the fine).) Rather, Judge Giles simply imposed a fine that equaled the value of a transaction that should not have taken place and then doubled that amount to serve as punishment for engaging in corrupt behavior. (*Id.* at 40.)

Respondent argues that based on the decline of the real estate market, Judge Giles's intent regarding the calculation of Respondent's fine is no longer met and the fine should therefore be adjusted. (*Id.*) The record reflects that Respondent is presently able to pay the fine notwithstanding the economic downturn. (*See* Doc. No. 50 at 40; *see also id.* at 45-46.) We will not permit Respondent to avoid his punishment simply because of the decline in the real estate market.

D.  **Respondent's Sale of Home Constituted a Change in Economic Conditions**

The Government argues that Respondent's sale of his home "constitutes a material change in his financial resources that warrant relief under Section 3572." (Doc. No. 84 at 4.) Based on the sale of the home, the Government argues that "the [Respondent] has more than sufficient funds to pay the fine in full." (*Id.*) Respondent argues that "adjusting the schedule so

7

as to accelerate the due date would not be 'in the interests of justice.'" (Doc. No. 85 at 4.) Respondent argues further that it was not the court's intent "to divest [Respondent] of all his liquid assets . . . ." (*Id.*)

Since payment of the fine was to be made in installments, Respondent was required to "notify the court of any material change in [his] economic circumstances that might affect [his] ability to pay the fine." 18 U.S.C. § 3572(d)(3). After receiving notice of a material change, the court may "adjust the payment schedule, or require immediate payment in full, as the interest of justice require." *Id.* This includes changes that would either reduce the defendant's ability to pay or "changes that would materially increase [the defendant's] ability to pay." *United States v. Fabiilli*, No. 98-278, 2009 WL 195663, at *1 (D. Utah Jan. 26, 2009); *see also* 18 U.S.C. § 3572(d)(3) (providing that after defendant supplies information regarding change in economic circumstances, the court may "require immediate payment in full.").

Courts consider the sale of a home to be a material change in economic conditions. *See United States v. Hyde*, 497 F.3d 103, 108 (1st Cir. 2007) (permitting a writ of garnishment against the proceeds of a home sale based on a material change in economic circumstances under § 3572(d)(3)); *United States v. Klein*, No. 03-813, 2007 WL 2274254, at *4 (S.D.N.Y. Aug. 7, 2007) (stating that the "sale of a $550,000 house unencumbered by a mortgage would almost certainly have qualified as a material change" entitling the Government "to accelerate the payment schedule or require payment in full"). Respondent's economic circumstances materially changed after receiving over $1.2 million in proceeds from the sale of his home. (*See* Doc. No. 84 Ex. A.) That the sale came roughly a year and a half after Respondent was sentenced, and in the midst of a down real estate market, does not make the transaction any less material. The sale

8

of Respondent's home is a material change in his economic circumstances, and the proceeds from the sale must be considered in determining Respondent's ability to pay the fine.

**E.      Adjustment of Fine Schedule**

We are satisfied that an adjustment in the payment schedule of the Petitioner's fine is appropriate. In determining the time and method of payment of a fine, the Court shall consider, inter alia, "the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant . . . ." 18 U.S.C. § 3572(a)(2). As noted above, a number of individuals are financially dependant on Respondent. We are also aware, however, that Respondent rents a 7,000-square-foot home and leases two BMWs, has significant income from a disability policy, and has access to a family trust. This is in addition to the proceeds from the sale of the house. (Doc. No. 91 at 71.) Moreover, Respondent is actively pursuing the sale of a piece of real property that would "substantially exceed the balance . . . presently due on [his] fine." (Doc. No. 91 at 25-26.) Respondent has both the means and the ability to pay a significant portion of the fine immediately.

Accordingly, Respondent is ordered to pay $350,000 toward his fine. This will leave Respondent with a balance due on the fine of $288,236.32. Respondent shall pay the balance of the fine at the rate of $50,000 per month beginning January 1, 2011.

### III. CONCLUSION

For the foregoing reasons, the Government's motion will be granted.

An appropriate order follows.

BY THE COURT

_____
R. Barclay Surrick, J.
